IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA KALINOWSKI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 15 C 8285 ) ) Magistrate Judge Sidney I. Schenkier |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER[1]

In this Social Security appeal, plaintiff Cynthia Kalinowski moves for reversal and remand of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disabled widow's insurance benefits under 42 U.S.C. § 402(e) (doc. # 11). The Commissioner has filed a cross-motion asking the Court to affirm the decision (doc. # 20). For the reasons set forth below, we grant Ms. Kalinowski's motion and deny the Commissioner's motion.

I.

Ms. Kalinowski was born on June 19, 1958, making her 45 years old at the time of her husband's death on December 30, 2003 (R. 277, 329). On January 25, 2010, Ms. Kalinowski filed an application for widow's insurance benefits, stating that she became unable to work due to a disabling condition beginning on December 15, 2001 (R. 277-78). In order to be entitled to disabled widow's benefits, Ms. Kalinowski must have established that she had a disability beginning on or before January 31, 2013 (the Commissioner calls this the end of the "prescribed

---

[1] On December 4, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 6).

period"), which is seven years after January 1, 2006, the date Ms. Kalinowski was last entitled to survivor's benefits (R. 13). *See* 42 U.S.C. § 402(e)(4); 20 C.F.R. 404.335(c).

After her claim was denied initially and on reconsideration, Ms. Kalinowski appeared and testified at a hearing before an Administrative Law Judge ("ALJ") on February 28, 2012 (R. 103-39). The ALJ issued an opinion denying benefits on April 4, 2012 (R. 142-58), but on July 29, 2013, the Appeals Council vacated the decision and remanded the case to the ALJ (R. 159-62). The ALJ obtained additional evidence and held another hearing on October 6, 2014 (R. 63-102).[2] He issued a second written opinion on November 17, 2014, finding Ms. Kalinowski not disabled (R. 9-29). On July 22, 2015, the Appeals Council issued a decision adopting the ALJ's "findings or conclusions regarding whether the claimant is disabled," but modifying the ALJ's opinion to state Ms. Kalinowski was not under a disability from her alleged onset date through January 31, 2013, the end of the prescribed period (R. 4-5).[3] The ALJ's ruling, as adopted and modified by the Appeals Council, stands as the final decision of the Commissioner. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014), as amended (Aug. 20, 2014), reh'g denied (Oct. 10, 2014).

## II.

The medical record begins on March 13, 2007, when Ms. Kalinowski was admitted to Loretto Hospital after overdosing on Paxil (anti-depressant) and alcohol and attempting to cut her wrist (R. 381-83). Upon discharge two days later, her primary diagnosis was listed as depression, with several secondary diagnoses that included alcohol abuse and personality disorder (R. 381).

---

[2] Earlier scheduled hearing dates on January 23, 2014 and June 10, 2014 were postponed because Ms. Kalinowski's lawyer was not present at the hearing on those dates (R. 52-53, 61-62).

[3] The ALJ had erroneously written at the conclusion of his opinion that Ms. Kalinowski was not disabled from her onset date through the date of the ALJ's decision.

2

After a gap of almost three years, the evidence in the record picks up again in February 2010, when Ms. Kalinowski completed various function reports for the Bureau of Disability Determination Services ("DDS"). She reported that she lived alone in a house with her dog, and she took care of her personal needs, prepared meals, cleaned, did laundry, drove alone to the store and church, and sometimes babysat her grandchildren (R. 317-21). She had no trouble getting along with people, but she sometimes had trouble leaving home because she felt depressed or panicked (R. 318, 322-23). Ms. Kalinowski's oldest daughter, Connie O'Connor, filled out a function report in February 2010, stating, among other things, that her mother could no longer care for her grandchildren or be social due to panic attacks and depression (R. 309-13). Ms. Kalinowski took medications prescribed by her primary care physician, Saroj Verma, M.D., including Paxil, Xanax (anti-anxiety) and Seroquel (anti-psychotic) (R. 548-53).

On April 14, 2010, Harley G. Rubens, M.D., completed a psychiatric evaluation of Ms. Kalinowski for DDS. He observed that she "seemed somewhat shaky and clammy," her "[d]isposition was generally dramatic," her mood was "moderately anxious," and her attention and concentration fluctuated with her anxiety level (R. 510). However, Ms. Kalinowski calmed down quickly during the examination, and she had normal speech, cognition, orientation, memory, general knowledge and judgment (R. 509-11). Dr. Rubens wrote that Ms. Kalinowski "describe[d] an inconsistent picture concerning her anxiety and withdrawal" (R. 511). On May 3, 2010, R. Leon Jackson, Ph.D., completed a psychiatric review technique based on Dr. Ruben's examination. He concluded that Ms. Kalinowski's mental impairments were not severe and caused no more than minimal functional limitations (R. 515-27).

Ms. Kalinowski began receiving mental health counseling from Metropolitan Family Services ("MFS") in March 2010. At a mental status examination in May 2010, she showed good

3

judgment and impulse control, but she appeared distraught, with a very intense demeanor and anxious and constricted mood (R. 535). An MFS psychiatrist, Nasir Ali Syed, M.D., diagnosed Ms. Kalinowski with major depressive disorder and agoraphobia without panic disorder, and he continued her prescriptions for Paxil, Xanax and Seroquel (*Id.*). On June 14, 2010, Dr. Verma filled out a medical evaluation stating that Ms. Kalinowski was "extremely depressed and anxious," with serious limitations in activities of daily living ("ADLs"), social functioning, and concentration persistence or pace, and four or more episodes of decompensation in the previous 12 months (R. 680). In addition, Dr. Verma opined that Ms. Kalinowski had full capacity for all physical activities, except she could not lift more than 10 pounds (*Id.*).

Ms. Kalinowski's mental health symptoms fluctuated. From July 2010 through February 2011, she sometimes felt her medications were working well to reduce her panic and depression and improve her sleep, but at other times she was tearful and distraught and reported having trouble sleeping and eating (R. 558-61, 571-72, 863, 867, 1037). On March 3, 2011, Ms. Kalinowski wrote in a function report that her panic attacks, anxiety and depression were getting worse, and that sometimes she did not want to leave the house or get out of bed (R. 332, 335). An MFS note from the same date noted that despite compliance with her medication, Ms. Kalinowski had increased anxiety with some breakthrough panic attacks (R. 567).

On April 1, 2011, E. Eveline Powers, M.D., another psychiatrist at MFS, completed a mental impairment questionnaire for Ms. Kalinowski (R. 640). After reviewing Ms. Kalinowski's symptoms, including sleep, mood and appetite disturbance, recurrent panic attacks, and feelings of sadness and hopelessness (R. 640, 642), Dr. Powers opined that she had moderate restrictions in ADLs, marked difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence or pace, which would seriously limit her ability to

4

perform in various work settings (R. 640-42). Dr. Powers noted that Ms. Kalinowski took Paxil, Xanax and Seroquel, but she "remains depressed and has frequent panic attacks" (R. 640-41).

On May 12, 2011, Kirk Boyenga, M.D., affirmed the May 2010 DDS psychiatric review technique finding Ms. Kalinowski's mental impairments were not severe (R. 644). Dr. Boyenga noted that although Ms. Kalinowski continued to feel irritable, withdrawn and hopeless, a February 2011 assessment from MFS stated that therapy was helping to decrease Ms. Kalinowski's anxiety and allowing her to feel better and socialize more (R. 645). Dr. Boyenga indicated that he had reviewed all of the evidence in the file, but this does not appear to have included Dr. Powers' April 2011 report, because in his explanation of his decision, the latest psychiatric evidence to which Dr. Boyenga referred was dated March 11, 2011 (R. 644-45).

From June through September 2011, Ms. Kalinowski reported continuing depression at her counseling sessions at MFS (R. 857-58, 570). On September 9, 2011, Dr. Verma's partner, Obaida Shah-Khan, M.D., filled out a physical RFC form that listed Ms. Kalinowski's physical impairments as hypertension, peripheral vascular disease, and poor circulation and pain in her legs (R. 647). He opined that she could only sit/stand for 10 minutes at a time, and less than 2 hours total in a day (R. 647-48). Dr. Shah-Khan wrote that Ms. Kalinowski was significantly limited in reaching and handling and could lift less than 10 pounds only rarely because of dizziness from hypertension (R. 649). Her medications included Norvasc and Prinivil, for high blood pressure and chest pain, and Trental, for poor blood circulation (R. 545).

On November 7, 2011, Ms. Kalinowski suffered a comminuted fracture (a break into more than two fragments) of the midshaft of her right humerus (the arm bone running from shoulder to elbow) (R. 662-63). Kishan Chand, M.D., manipulated the fracture and applied a long-arm cast (*Id.*). On December 23, 2011, Ms. Kalinowski still had pain and aches in her arm

(R. 732), and Dr. Chand predicted slow healing (R. 663). On January 18, 2012, Dr. Chand applied a new cast (R. 731), and on January 24, 2012, Dr. Chand opined that Ms. Kalinowksi's prognosis was guarded, and he prescribed an orthotic for her upper arm for 6 months (R. 723-24). On February 15, 2012, Dr. Chand noted that the fracture site showed "more healing," and the pain was regressing (R. 735).

On January 30, 2012, another MFS psychiatrist, Franchot Givens, M.D., completed a psychiatric evaluation of Ms. Kalinowski, which noted some improvement in her depression and panic attacks with medication (R. 704). However, Ms. Kalinowski reported that she continued to experience depressive and anxiety episodes that were easily triggered without warning, and she was becoming increasingly unable to cope, make decisions or solve basic problems by herself (R. 712, 940, 947-48). She continued to take Seroquel, Paxil and Xanax (R. 710-11).

### III.

On February 28, 2012, Ms. Kalinowski testified at a hearing before the ALJ that she became depressed in 2001 when her mother and grandmother died and her husband's illness worsened (R. 109-10). After her husband passed away, she drank too much, but she stated that she no longer drank more than one glass of wine every two weeks (R. 114). Ms. Kalinowski testified that she did not sleep well, and most days she wants to stay in bed (R. 116, 122, 132). She rarely cleaned the house or did laundry, and she had little appetite, eating only one meal a day or some days not eating at all (R. 116-20). Ms. Kalinowski sometimes drove to the store, to church and to see her grandkids, but she was too anxious to babysit for them anymore (R. 120-21). In addition, she still had pain from her broken arm (R. 123-24).

The ALJ issued a written decision on April 4, 2012, finding Ms. Kalinowski was not disabled and denying benefits (R. 142). On July 29, 2013, the Appeals Council vacated the

ALJ's decision and remanded the case with orders for the ALJ to: (a) evaluate the opinions of Ms. O'Connor; (b) further consider Ms. Kalinowski's maximum RFC during the entire period at issue by specifically evaluating the treating source opinions of Dr. Verma, Dr. Powers, and Dr. Shahkhan, and explaining the weight given to those opinions; and (c) if warranted by the expanded record, obtain evidence from a VE regarding the effect of Ms. Kalinowski's limitations as established by the record as a whole on her occupational base (R. 159-61).

## IV.

Reports from MFS throughout 2012 indicate that Ms. Kalinowski's arm was not healing properly. She was unable to use her right arm and had significant pain; surgery on her arm was repeatedly scheduled and re-scheduled (R. 851, 924, 928). On October 15, 2012, Ms. Kalinowski was admitted to the hospital for an infection in her "nonunion" -- *i.e.*, the fracture had not healed -- right humerus (R. 805). She was discharged one week later, after surgical irrigation and debridement (R. 807).

Meanwhile, in the summer of 2012, Dr. Givens performed an updated psychiatric evaluation of Ms. Kalinowski, diagnosing her with bipolar II disorder and panic disorder with agoraphobia (R. 928). He opined that Ms. Kalinowski's frustration and preoccupation with her broken arm had caused a significant increase in her mental health symptoms, and he increased Ms. Kalinowski's Seroquel prescription to help her sleep (R. 924).

On January 4, 2013, MFS notes stated that Ms. Kalinowski's anxiety and depression had increased over the past year because of her arm injury and limited mobility (R. 911). After two unsuccessful surgeries to repair her broken arm, Ms. Kalinowski felt her arm would never improve (R. 918-20). She was tearful and did not seem able to cope with her anxiety and depression (R. 920). Ms. Kalinowski reported that she could not do basic household tasks

7

without help; she was in pain much of the time, and she felt she could not make basic, daily decisions without first consulting her sister or her oldest daughter (R. 919-20). On January 30, 2013, Ms. Kalinowski wrote on her individual treatment plan for MFS that she felt she had not met any of her goals, and she was still struggling with panic attacks and depression (R. 905).

On April 8, 2013, Ms. Kalinowski was admitted to the hospital with generalized weakness, altered mental status and renal failure after a possible beer and Seroquel overdose (R. 754-56). She was also diagnosed with rhabdomyolysis (a breakdown of muscle tissue that releases a damaging protein into the blood) and a serious bacterial skin infection (R. 756-58). There was some confusion over which medications Ms. Kalinowski took before going to the hospital because she could not open her Seroquel prescription bottle on her own due to her right arm problems (R. 780). Her overdose may have been related to the large doses of vancomycin (antibiotic) she had been taking for the infection in her arm (R. 809). Ms. Kalinowski was in the hospital for approximately two weeks (R. 790) then transferred to a nursing home and bed-ridden for approximately three months (R. 809).

On June 3, 2014, Dr. Shah-khan wrote a letter opining that Ms. Kalinowski was disabled due to neuropathy of her legs, hypertension, poor leg circulation, depression, anxiety, a non-healing fracture of her right arm, mechanical deformity of left arm, and multiple rib fractures (from a fall a month earlier) (R. 753). On September 23, 2014, he completed a physical RFC form. Dr. Shah-Khan opined that Ms. Kalinowski could not lift more than 5 pounds, could not stand/walk more than one hour; could never reach, handle or grasp with her right arm; could not sit for more than 3 hours; and would likely miss 3 or more days of work per month (R. 811).

## V.

On October 6, 2014, Ms. Kalinowski again testified at a hearing before the ALJ (R. 63). She stated that her daughters did everything for her, including shopping, bills, cooking and cleaning (R. 70). She had trouble moving because she developed neuropathy in her legs after being bedridden for weeks (R. 71). Ms. Kalinowski recalled that in 2010 and 2011, she cried often and suffered panic attacks at least twice per week, which were easily triggered (R. 73-78). She described sometimes "flying sky high or hitting rock bottom" (R. 75).

The ALJ presented a hypothetical to the VE almost identical to the one he presented at the first hearing more than two years before: an individual who could perform medium work and stand/walk/sit for six hours in a day, but was unable to understand, remember and carry out detailed and complex job tasks and was limited to simply and routine work with only casual interaction with the public (R. 81-82). The VE testified that a significant number of jobs were available for this individual (R. 82-83). However, all competitive work would be eliminated for an individual with the limitations identified by Dr. Powers in her April 1, 2011 report or with the impairments listed by Drs. Verma and Shah-Khan in their June 2010 and September 2011 reports (R. 85-93). The VE further testified that if the individual's dominant (right) hand was restricted to an "occasional" "assist role" with no reaching, light jobs would be available (R. 93-94). A restriction to "less than occasional use of the right upper extremity" would be "very limiting," though "it [wa]s possible to still perform the jobs" (R. 95).

## VI.

On November 17, 2014, the ALJ issued a second written opinion finding Ms. Kalinowski was not disabled from her alleged onset date of December 15, 2001 through January 31, 2013, the end of the prescribed period (R. 13). The ALJ determined that Ms. Kalinowski had the

9

following severe impairments -- "anxiety related disorder, peripheral vascular disease, a history of right ankle pain, right shoulder fracture and alcohol abuse" -- but that none of her impairments, alone or in combination, were of Listing-level severity (R. 15). Regarding her right shoulder, the ALJ noted that Ms. Kalinowski fractured her right humerus and was later hospitalized due to an infection in the area (R. 19).

With regard to Ms. Kalinowski's mental impairments, the ALJ determined that Ms. Kalinowski had only mild restriction in ADLs because she lived alone in a house with her dog and was able to prepare meals, clean, do laundry and shop, demonstrating that her "performance of simple routine is appropriate, effective and sustainable" (R. 15). The ALJ found that Ms. Kalinowski had moderate difficulties in social functioning because Ms. Kalinowski testified that she had uncontrollable panic attacks when dealing with the public, and her daughter stated that she was nervous and reluctant to socialize (R. 16). However, the ALJ noted that Ms. Kalinowski talked to her sister and daughters often and did not have trouble getting along with family and friends (R. 15-16). The ALJ also found that she had moderate limitations in maintaining concentration, persistence or pace based on Ms. Kalinowski's and her daughter's reports that her concentration was terrible and she could only pay attention for 5 to 15 minutes depending on her mood (R. 16). The ALJ found no episodes of decompensation (*Id.*).

The ALJ then determined that Ms. Kalinowski had the RFC to perform "medium restricted work" (R.16). She could lift, carry, push and pull 50 pounds occasionally and 25 pounds frequently and stand, walk and sit for six hours in an eight-hour workday (*Id.*). In addition, Ms. Kalinowski was "capable of simple routine work in a non-production rate environment with only occasional interaction with the public" (*Id.*).

The ALJ found that Ms. Kalinowski's statements were "not entirely credible" (R. 17). He explained that Ms. Kalinowski had alleged an onset date of December 2001, but at that time, she was able to do the physically and emotionally demanding job of caring for her disabled husband and three daughters (R. 20). In addition, the ALJ stated that Ms. Kalinowski's record of mental health treatment did not support her claims of disability because "the treatment has been generally successful in controlling those symptoms" (*Id.*).

The ALJ reviewed Dr. Verma's June 2010 opinion but found it "less persuasive" because the evidence did not support Dr. Verma's finding that Ms. Kalinowski had suffered four episodes of decompensation, or that Ms. Kalinowski had severely decreased cardiac functionality (R. 20). The ALJ also found Dr. Verma's report internally inconsistent because Dr. Verma found that Ms. Kalinowski had full capacity for walking, standing, sitting, pushing and pulling on the one hand, and extreme limitations in her ADLs on the other (*Id.*). The ALJ found the opinions of Dr. Verma's partner, Dr. Shah-Khan, similarly "less persuasive" (R. 21). The ALJ stated that Dr. Shah-Khan's September 2011 opinion was "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion" that Ms. Kalinowski was disabled and that she would have to elevate her legs to waist-high level due to poor circulation (*Id.*). Regarding Dr. Shah-Khan's 2014 opinion, the ALJ simply noted that it "[wa]s well after the end of the prescribed period" (*Id.*). The ALJ then assigned "some weight" to the RFC opinions of the state agency physicians, which supported a finding that Ms. Kalinowski was not disabled (*Id.*).

The ALJ assigned "little weight" to the April 2011 opinion of Dr. Powers (R. 21). The ALJ reasoned that Dr. Powers had seen Ms. Kalinowski only once, and that Ms. Kalinowski had been receiving psychiatric treatment from MFS for less than one year at that time (*Id.*). In addition, the ALJ stated that subsequent notes from MFS "suggest the claimant's mental health

treatment has been successful in controlling symptoms" (*Id.*), specifically noting that in January 2013, right before the prescribed period ended, Ms. Kalinowski's therapist found that she had demonstrated normal attention, orientation and memory (R. 19). Based on his findings, the ALJ concluded that Ms. Kalinowski was not disabled from her onset date through the date of the decision (R. 22). As explained above, the Appeals Council adopting the ALJ's "findings or conclusions regarding whether the claimant is disabled," but modified the ALJ's opinion to clarify that Ms. Kalinowski was not disabled from her alleged onset date through January 31, 2013 (R. 4).

## VII.

We review the ALJ's decision deferentially to determine if it was supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Alvarado v. Colvin*, 836 F.3d 744, 747 (7th Cir. 2016). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Ms. Kalinowski argues that the ALJ's opinion contains several errors that require remand, including that the ALJ did not adequately account for her right shoulder impairment in the RFC or for Dr. Powers' opinion (doc. # 21: Pl.'s Mem. at 1). For the reasons set forth below, we conclude that remand is necessary on these bases, and we therefore do not reach Ms. Kalinowski's additional arguments for remand.

## A.

The ALJ determined that despite having the severe impairment of a history of right shoulder fracture, Ms. Kalinowski could perform medium exertion work with no manipulative or reaching limitations. The ALJ noted that Ms. Kalinowski fractured her right shoulder and subsequently suffered an infection in that shoulder. However, the ALJ erred by ignoring additional evidence of complications with Ms. Kalinowski's right shoulder impairment and failing to determine what, if any, limitations arose from them.

It is well-settled that "the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). However, here, the ALJ's opinion provides no analysis of Ms. Kalinowski's right shoulder impairment between November 2011, when she fractured her right humerus, and October 2012, when she was hospitalized for an infection in her right humerus. As the above discussion shows, Ms. Kalinowski repeatedly complained about pain and functional limitations from her right humerus impairment during the intervening year. The ALJ erred in failing to consider this evidence.

In fact, by April 2013, Ms. Kalinowski could not even open a medicine bottle due to her right arm limitations. We recognize that this complaint came shortly after January 31, 2013, the deadline by which Ms. Kalinowski had to be disabled in order to be eligible for benefits. However, the ALJ could not simply disregard this evidence without explaining why it did not bear on whether Ms. Kalinowski was disabled during the relevant period. *See, e.g., Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008) (ALJ was required to examine evidence that post-dated claimant's date last insured).

Moreover, the ALJ does not cite any support for his conclusion that Ms. Kalinowski could perform medium work with her right shoulder impairment. Medium work requires, among other things, the ability to lift up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). There is no DDS opinion in the record on Ms. Kalinowski's physical limitations -- from before or after she broke her right humerus. By contrast, even before her right arm injury, two treaters (Drs. Verma and Shah-Khan) found that Ms. Kalinowski could not lift more than 10 pounds and that her limitations in that regard increased between June 2010 and September 2011 (R. 647-49, 680). Other than Dr. Chand's notes on Ms. Kalinowski's right arm problems (which the ALJ did not mention), there is only one treating physician opinion on Ms. Kalinowski's physical RFC after she broke her right humerus. This is Dr. Shah-Khan's opinion from 2014, which the ALJ discounted because it was written after the prescribed period ended. Thus, "[t]he ALJ's conclusion [that Ms. Kalinowski could perform medium exertion work] is not supported by any medical evidence in the record; it amounts to the ALJ improperly 'playing doctor.'" *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). These errors in assessing Ms. Kalinowski's physical RFC require remand.

### B.

Deficiencies in the ALJ's analysis of Ms. Kalinowski's mental impairments also require remand. The ALJ gave "little weight" to Dr. Powers' opinion on Ms. Kalinowski's mental limitations because she had seen Ms. Kalinowski only once, and Ms. Kalinowski had been receiving psychiatric treatment from MFS for less than one year at that time. Moreover, the ALJ stated that subsequent records from MFS -- specifically, a note from January 2013 that Ms. Kalinowski had normal attention, orientation and memory -- "suggest the claimant's mental health treatment has been successful in controlling symptoms" (R. 21). We find that the ALJ

impermissibly cherry-picked from the record to reach his conclusion that Dr. Powers' opinion was entitled to little weight.

It is well-settled that "[a]n ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence. This 'cherry-picking' is especially problematic where mental illness is at issue, for a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [her] overall condition." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (internal citations and quotations omitted). By focusing only on Ms. Kalinowski's attention, orientation and memory during one appointment with MFS, the ALJ ignored the evidence throughout 2012 and 2013 from MFS that the symptoms of Ms. Kalinowski's mental impairments were worsening, not improving. Indeed, throughout the second half of 2012 and the beginning of 2013, Dr. Givens, another psychiatrist at MFS, opined that Ms. Kalinowksi's mental state was deteriorating in part due to her continuing symptoms from her right arm impairment.

In reaching his conclusion discounting Dr. Powers' April 2011 opinion on the basis that she had seen Ms. Kalinowski only one time, the ALJ disregarded a much longer course of treatment at MFS. Dr. Powers only saw Ms. Kalinowski once before writing her opinion in April 2011, but Dr. Powers had succeeded another psychiatrist at MFS, Dr. Syed, who along with an MFS counselor had treated Ms. Kalinowski for a year before the April 2011 opinion. The ALJ provided no support for his decision that one year of mental health treatment was too minimal to support Dr. Powers' opinion. And, we note that Ms. Kalinowski's treatment at MFS continued through the prescribed period in 2012 and 2013 with another psychiatrist, Dr. Givens, whose treatment notes and opinions the ALJ also failed to address.

This error by the ALJ was not harmless. The VE testified that if an individual had the mental limitations identified in Dr. Powers' April 2011 report, all competitive work would be eliminated (R. 85-86). Therefore, on this basis as well, we remand the ALJ's opinion.

## CONCLUSION

For the reasons stated above, we grant Ms. Kalinowski's motion to remand (doc. # 11), and deny the Commissioner's motion to affirm (doc. # 20). The case is remanded for further proceedings consistent with this opinion. The case is terminated.

ENTER: _____

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**DATE: November 29, 2016**